UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  3/27/2025
```

PARO MANAGEMENT CO., INC. and J&N
REALTY ASSOCIATES, LLC,

                 Plaintiffs,

-against-

WILLIS OF NEW JERSEY, INC.,

                 Defendant.

1:24-cv-4885 (MKV)

**OPINION AND ORDER
GRANTING
MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

      Plaintiffs Paro Management Co., Inc. ("Paro") and J&N Realty Associates, LLC ("J&N"), bring this action against Willis of New Jersey, Inc. ("Willis"), an insurance broker, asserting claims of negligence and negligent misrepresentation under New York state law [ECF No. 1-1 at 74–81 ("AC")]. Willis moves to dismiss Plaintiffs' claims [ECF No. 13]. For the reasons set forth below, the motion to dismiss is GRANTED.

## I.    BACKGROUND[1]

**A. Facts**

      Plaintiffs Paro Management Co., Inc. ("Paro") and J&N Realty Associates, LLC ("J&N") (collectively, "Plaintiffs") are the owner and manager, respectively, of a residential property in Queens, New York. AC ¶ 2. Defendant Willis of New Jersey, Inc. ("Willis") is an insurance broker. *See* AC ¶ 1. Willis procured for Plaintiffs a "Location Pollution Legal Liability" insurance policy with Allied World National Assurance Company ("Allied") "effective December 22, 2010[] to January 22, 2016." AC ¶ 3. Allied separately issued Plaintiffs a Location Pollution Legal Liability

---

[1] The facts are taken from the Amended Complaint that Plaintiffs filed in state court [ECF No. 1-1 at 74–81 ("AC")]. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true.").

1

Policy effective January 22, 2019 to January 22, 2022. AC ¶ 17.[2]  Plaintiffs allege that the two policies insured them for claims for losses arising out of pollution incidents at Plaintiffs' residential property during the periods of December 22, 2010 to January 22, 2016 and January 22, 2019 to January 22, 2022. AC ¶ 19.

"Sometime in January of 2014," Plaintiffs received a "Notice of Violation" from the New York State Department of Health alerting them to the presence of lead paint in one of the units within their residential property. AC ¶ 24. Plaintiffs allege that "[o]n or about February 20, 2014", Plaintiffs "notified" Willis "in writing of the Notice of Violation," provided a copy of the Notice, and "instructed WILLIS to notify ALLIED." AC ¶ 24. According to Plaintiffs, Willis "represented" that "notice would be provided to ALLIED." AC ¶¶ 43, 53, 54. Plaintiffs further allege that Willis "never provided said notice to" Allied. AC ¶ 24.

Thereafter, former tenants filed a lawsuit against Plaintiffs, in New York Supreme Court, alleging that a minor was exposed to lead paint while living in Plaintiffs' residential property. *See* AC ¶¶ 27, 28; *Martha Sinche and Jorge Apuango, et al. v. Paro Management, Inc. et al.*, Index No. 703956/2017 (the "Lead Exposure Lawsuit"). Although it was filed in 2017, Plaintiffs first learned of the Lead Exposure Lawsuit in 2020. *See* AC ¶ 27. When Plaintiffs belatedly learned of the lawsuit, they notified Allied. *See* AC ¶¶ 27, 30. Allied, however, disclaimed coverage for the Lead Exposure Lawsuit. AC ¶ 32.

Allied disclaimed coverage on the grounds that (1) "no claim arising out of the pollution incident was reported to Allied . . . during the 2010-2016 policy period," and (2) Allied owes no

---

[2] The Amended Complaint initially is ambiguous about whether Willis had any role in procuring the later policy. *See* AC ¶ 3. However, based on the phrasing of a later paragraph of the Amended Complaint and the memoranda that both parties submitted in connection with the motion to dismiss, it appears that both parties agree that "Plaintiffs do not allege that Willis had any role in procuring the 2019-2022 policy with Allied" [ECF No. 14 ("Def. Mem.") at 2; ECF No. 15 ("Pl. Opp.") at 3)]. *See* AC ¶ 17.

2

coverage under the 2019-2022 policy "because that policy's Known Pollution exclusion precludes coverage for damages claimed in the [Lead Exposure] Lawsuit." AC ¶ 32. With respect to the second ground for disclaiming coverage, according to Plaintiffs, "Allied concluded" that it did not owe coverage under the 2019-2022 policy "because it was never notified in 2014" of the Notice of Violation from the New York State Department of Health alerting Plaintiffs to the presence of lead paint in their residential property. AC ¶ 34.

Plaintiffs thereafter brought an insurance coverage lawsuit against Allied in New York Supreme Court. AC ¶ 36; *see Paro Management Co., Inc. et al. v. Allied World National Assurance Company*, Index No. 655681/2021 (the "Coverage Lawsuit"). The Coverage Lawsuit remains pending in state court [ECF No. 14 at 3].

### B. Procedural History

Plaintiffs initiated this action against Willis by filing a complaint in the Supreme Court of New York, County of New York [ECF No. 1-1]. The operative pleading is the Amended Complaint [ECF No. 1-1 at 74–81 ("AC")]. The Amended Complaint asserts (1) one claim for negligence, AC ¶¶ 41–49, and (2) one claim for negligent misrepresentation, AC ¶¶ 50–58. The gravamen of the Amended Complaint is that, if Allied denies Plaintiffs coverage because Allied was never notified of the Notice of Violation regarding the presence of lead paint, "such lack of notice is due to WILLS' negligent acts and omissions." AC ¶ 40.

Willis removed the action to this Court, invoking the Court's diversity jurisdiction [ECF No. 1]. Willis thereafter filed a motion to dismiss the Amended Complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, or, in the alternative, to stay this case pending the resolution of the Lead Exposure Lawsuit and the Coverage Lawsuit [ECF No. 14 ("Def. Mem.")]. In particular, in seeking dismissal for failure to state a claim, Willis

3

argues that Plaintiffs fail to sufficiently allege that Willis had a duty to provide Allied with the Notice of Violation. *See* Def. Mem. at 4–5. Willis also argues that Plaintiffs' claims are not ripe because "they are predicated on" findings "that there is no coverage in the Coverage [Lawsuit]" and that Plaintiffs are "liable in the Lead Exposure Lawsuit." Def. Mem. at 7.

Plaintiffs filed an opposition to the motion to dismiss [ECF No. 15 ("Pl. Mem.")]. Willis filed a reply brief [ECF No. 17 ("Reply")].

## II.  LEGAL STANDARDS

### A.  Ripeness

"To be justiciable, a cause of action must be ripe—it must present 'a real, substantial controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quoting *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)). "Ripeness 'is peculiarly a question of timing.'" *Id.* (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)). "A claim is not ripe if it depends upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Thomas*, 473 U.S. at 580–81). The plaintiff has the burden of showing that a dispute is ripe for adjudication. *See Renne v. Geary*, 501 U.S. 312, 316 (1991).

### B.  Failure To State a Claim

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The allegations must raise "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id*.

### III.   DISCUSSION

Plaintiffs assert claims against Willis for negligence and negligent misrepresentation. Those claims are not ripe for adjudication. Any controversy between the parties in this case is contingent on the future possibility that two other cases will both have outcomes adverse to Paro and J&N. As such, the Court lacks subject matter jurisdiction.

In the alternative, Plaintiffs fail to state a claim for relief. The parties agree that New York law governs this case. *See* Def. Mem. at 4; Pl. Opp. at 7. Under New York law, both of Plaintiffs' claims require Plaintiff to allege that Willis, an insurance broker, had a duty to supply to Plaintiffs' insurer, Allied, the Notice of Violation alerting Plaintiffs to the presence of lead paint in their residential property. However, under New York law, an insurance broker "generally owes the insured no more than the common-law duty to procure the insurance coverage that the insured requests." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 383 (2d Cir. 2006); *see Murphy v. Kuhn*, 90 N.Y.2d 266, 269–70, 660 N.Y.S.2d 371, 682 N.E.2d 972 (1997). Plaintiffs fail adequately to allege that Willis owed them any additional duty here.

### A. Plaintiffs' Claims Are Not Ripe.

Willis argues that Plaintiffs' claims are not ripe because "they are predicated on" findings "that there is no coverage in the Coverage [Lawsuit]" and that Plaintiffs are "liable in the Lead Exposure Lawsuit." Def. Mem. at 7. The Court agrees. While this case is "predicated on" an insurance coverage dispute, *id.*, this case is *not* a declaratory action in which a federal court may "assert[] jurisdiction despite future contingencies." *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (internal quotation marks and citation omitted). Rather, Plaintiffs assert tort claims against Willis based on its alleged failure to relay the Notice of

Violation alerting them to the presence of lead paint in their residential property to Plaintiffs' insurer. Plaintiffs seek relief against Willis because Plaintiffs *may* be found liable for exposing their tenants to lead paint, and Plaintiffs' insurer *may* succeed in denying coverage on the ground that it was never notified of the presence of the lead paint. In other words, any "real, substantial controversy" between Plaintiffs and Willis "depends upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 687 (quoting *Thomas*, 473 U.S. at 580–81).

Accordingly, the Court concludes that Plaintiffs' claims against Willis are not ripe, and this case should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The Court rules in the alternative that, if this dispute is ripe, and the Court has jurisdiction, Plaintiffs fail to state a claim for relief. *See Sherman v. Town of Chester*, 752 F.3d 554, 567 (2d Cir. 2014).

### B. Plaintiffs Fail To State a Claim for Negligence.

"Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002); *see Ferreira v. City of Binghamton*, 38 N.Y.3d 298, 308, 194 N.E.3d 239, 245 (2022). Plaintiffs fail to state a negligence claim because Plaintiffs fail adequately to allege that Willis owed a duty to Plaintiffs to supply the Notice of Violation to Allied.

Plaintiffs' allegations that Willis owed Plaintiffs a duty to supply Allied with Notice of Violation are wholly conclusory. Specifically, in the Amended Complaint, Plaintiffs assert that Willis "had a duty to PLAINTIFFS based upon their business relationship as PLAINTIFFS' broker and consultant for insurance matters." AC ¶ 42. Plaintiffs further assert that Willis' purported duty

arose from "standards of the industry," the "representations made by WILLIS . . . that notice would be provided to ALLIED," and unspecified "verbal and written agreements and understandings." AC ¶ 43.  There are no other pertinent allegations.

Plaintiffs' conclusory assertion that Willis owed Plaintiffs a duty merely based on its role as Plaintiffs' broker, *see* AC ¶ 42, flies in the face of settled New York law.  As noted above, under New York law, "a broker . . . generally owes the insured no more than the common-law duty to procure the insurance coverage that the insured requests."  *GlobalNet Financial.Com, Inc.*, 449 F.3d at 383; *see Murphy*, 90 N.Y.2d at 269–70.  As discussed further below, in connection with the negligent misrepresentation claim, Plaintiffs fail to offer a single factual allegation to support their purely conclusory assertion that Willis was a general "consultant for insurance matters," in contrast with merely a broker who procured a single policy.  AC ¶ 42; *see* AC ¶ 3.  Furthermore, Plaintiffs' assertion that Willis owed them a duty based on "standards of the industry," AC ¶ 43, is "a legal conclusion couched as a factual allegation" that the Court is "not bound to accept," *Iqbal*, 556 U.S. at 678.  Indeed, governing law precludes the Court from accepting that conclusion.  *See GlobalNet Financial.Com, Inc.*, 449 F.3d at 383; *Murphy*, 90 N.Y.2d at 269–70.

Plaintiffs' remaining allegations that Willis owed them a duty are that Willis represented that "notice would be provided to ALLIED" and that there were other, unspecified "verbal and written agreements and understandings" between the parties.  AC ¶ 43.  In other words, Plaintiffs contend that "Willis undertook a duty to provide notice" to Allied because, Plaintiffs allege, Willis represented that it would provide such notice.  Pl. Opp. at 6–7.  Insofar as Plaintiffs' negligence claim is based on an alleged false representation by Willis that it would supply the Notice of Violation to Allied, the negligence claim must be dismissed as duplicative of Plaintiffs' negligent misrepresentation claim.  *See Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 257 F.

7

Supp. 3d 348, 359 (S.D.N.Y. 2017); *Paladini v. Capossela, Cohen, LLC*, No. 11-cv-2252 (LAP), 2012 WL 3834655, at *6 (S.D.N.Y. Aug. 15, 2012), *aff'd*, 515 F. App'x 63 (2d Cir. 2013); *see also Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, 156 F. Supp. 3d 348, 362 (E.D.N.Y. 2016). As for Plaintiffs' vague assertion about other, unspecified "agreements and understandings," AC ¶ 32, absent any factual amplification, that assertion is clearly insufficient to allege that Willis owed Plaintiffs a specific duty or to raise "more than a sheer possibility" that Willis acted unlawfully, *Iqbal*, 556 U.S. at 678. As such, if the Court has jurisdiction, Plaintiffs' negligence claim is dismissed pursuant to Rule 12(b)(6).

### C. Plaintiffs Fail To State a Claim for Negligent Misrepresentation.

To state a claim for negligent misrepresentation under New York law, a plaintiff must allege that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000); *see J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148, 863 N.E.2d 585, 587 (2007). Fatal for Plaintiffs' claim, "[p]romises of future conduct are not actionable as negligent misrepresentations." *Murray v. Xerox Corp.*, 811 F.2d 118, 123 (2d Cir. 1987); *see Hydro Investors, Inc.*, 227 F.3d at 20–21 ("the alleged misrepresentation must be factual in nature and not promissory or relating to future events"); *Margrove Inc. v. Lincoln First Bank of Rochester*, 54 A.D.2d 1105, 1106, 388 N.Y.S.2d 958, 960 (4th Dep't 1976) ("The mere failure of defendant to abide by its commitment cannot be made the basis of an action in tort for misrepresentation."). Plaintiffs allege that Willis "represented that it would provide" the Notice of Violation to Allied

8

but "never provided the notice." AC ¶ 54. However, Willis' alleged failure to keep its promise to provide the Notice of Violation to Allied is "not actionable as negligent misrepresentation[.]" *Murray*, 811 F.2d at 123. As such, if the Court has jurisdiction, Plaintiffs' claim for negligent misrepresentation must be dismissed on that basis alone.

Plaintiffs also fail adequately to allege a "special relationship" as required to state a claim for negligent misrepresentation. Ordinarily, "a broker is not in a special relationship with an insured." *GlobalNet Financial.Com, Inc.*, 449 F.3d at 383; *see Murphy*, 90 N.Y.2d at 269–70. New York courts have "identified three exceptional situations that may give rise to a special relationship, thereby creating an additional duty" on the part of the broker. *Voss v. Netherlands Ins. Co.*, 985 N.Y.S.2d 448, 453, 8 N.E.3d 823, 828 (2014). The situations are:

> (1) the agent receives compensation for consultation apart from payment of the premiums; (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent; or (3) there is a course of dealing over an extended period of time which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on.

*Id*. (quoting *Murphy*, 90 N.Y.2d at 272).

Plaintiffs fail to allege any facts from which the Court could reasonably infer the existence of a special relationship. In particular, Plaintiffs do not allege that they compensated Willis for any services beyond procuring a single policy. *See id.*; *cf.* AC ¶ 3. Plaintiffs also do not allege that they ever relied on Willis' "expertise" on any matter. *Voss*, 8 N.E. 3d at 828. Rather, accepting Plaintiffs' allegations as true, Plaintiffs contend that they instructed Willis to provide Allied with a copy of the Notice of Violation, which document Plaintiffs had in their possession, provided to Willis, and could have provided to Allied themselves. *See* AC ¶¶ 24, 39. Similarly, Plaintiffs offer no allegations of any "extended" dealings between Plaintiffs and Willis that would have put Willis on notice that its "*advice* was being sought and specially on." *Voss*, 8 N.E. 3d at 828 (emphasis

added). As such, Plaintiffs fail to allege that any of the "exceptional situations that may give rise to a special relationship" obtained here. *Id.*

Plaintiffs contend that *Murphy* and *Voss* are inapposite, since they contemplate the kind of special relationship that would give rise to a duty by an insurance broker to provide an insured with advice about coverage needs, whereas Plaintiffs contend that Willis had a duty to provide Allied with the Notice of Violation. *See* Pl. Opp. at 7. While it is true that *Murphy* and *Voss* concerned "a duty of advisement," *Murphy*, 90 N.Y.2d at 272; *Voss*, 8 N.E. 3d at 828, there is no question that a "special relationship" is an element of a negligent misrepresentation claim, *Hydro Investors, Inc.*, 227 F.3d at 20; *see J.A.O. Acquisition Corp.*, 8 N.Y.3d at 148, 863 N.E.2d at 587. Moreover, courts have looked to *Murphy* and its progeny for guidance in determining whether a plaintiff demonstrated the existence of a special relationship such that a broker may have had a duty to report a potential claim to an insurer. *See Abetta Boiler & Welding Serv., Inc. v. American Int'l Specialty Lines Ins. Co.*, 76 A.D.3d 412, 413, 906 N.Y.S.2d 540, 542 (1st Dep't 2010); *Philadelphia Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP*, 379 F. Supp. 2d 442, 460 (S.D.N.Y. 2005).

In one such case, the plaintiff survived summary judgment based on "evidence that *as a matter of routine*" the insured "referred all questions regarding its insurance claims to" the broker, which, in the past, had "handled all [the insured's] insurance needs, *including referring its claims to insurers*." *Abetta Boiler & Welding Serv., Inc.*, 76 A.D.3d at 413, 906 N.Y.S.2d at 542 (emphases added). Here, Plaintiffs offer no specific factual allegations of a similar relationship with Willis. While Plaintiffs assert in the Amended Complaint that Willis "asserted it would take care of PLAINTIFFS['] insurance needs, including notifying ALLIED of the [Notice of Violation]," AC ¶ 53, that conclusory assertion falls far short of alleging that "as a matter of routine," Plaintiffs had

10

relied on Willis for services beyond procuring a single policy, and Willis had, over the course of their past dealings, transmitted notices of claims to insurers, *Abetta Boiler & Welding Serv., Inc.*, 76 A.D.3d at 413, 906 N.Y.S.2d at 542. Furthermore, as explained above, Willis' alleged promise to provide Allied with the Notice of Violation, standing alone, cannot support a claim of negligent misrepresentation. *See Hydro Investors, Inc.*, 227 F.3d at 20–21. Accordingly, if the Court has jurisdiction, Plaintiffs' negligent misrepresentation claim is dismissed pursuant to Rule 12(b)(6).

## IV. <u>CONCLUSION</u>

For the reasons stated above, the motion to dismiss [ECF No. 13] is GRANTED, and this case is dismissed without prejudice. The Clerk of Court respectfully is requested to terminate the motion at docket entry 13 and to close this case.

**SO ORDERED.**

**Date: March 27, 2025**  
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**